IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:21-cv-00129-MR

| | |
|---|---|
| MARGARET LOUISE CLARK, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> ) <br> KILOLO KIJAKAZI, Acting ) <br> Commissioner of Social Security, ) <br> ) <br> Defendant. ) <br> _____ ) | **MEMORANDUM OF DECISION AND ORDER** |

**THIS MATTER** is before the Court on the Plaintiff's Motion for Summary Judgment [Doc. 8] and the Defendant's Motion for Summary Judgment [Doc. 10].

**I.     BACKGROUND**

On July 27, 2017, the Plaintiff, Margaret Louise Clark ("Plaintiff"), filed an application for period of disability benefits under Title II of the Social Security Act (the "Act"), alleging an onset date of September 13, 2013. [Transcript ("T") at 163-64]. The Plaintiff's claims were initially denied on October 11, 2017, [id. at 205], and again denied upon reconsideration on December 29, 2017, [id. at 211]. On the Plaintiff's request, a hearing was held on June 7, 2019 before an Administrative Law Judge ("ALJ"). [Id. at

68]. On July 23, 2019, the ALJ issued a written decision denying the Plaintiff benefits. [Id. at 68-82].

On July 16, 2020, the Appeals Council granted the Plaintiff's request for review. [Id. at 4]. On March 1, 2021, the Appeals Council issued the final decision of the Commissioner. [Id. at 1]. The Appeals Council adopted the findings of the ALJ at step one through step five of the sequential evaluation process. [Id. at 4-6]. However, the Appeals Council corrected an error at step five by replacing improperly named occupations with occupations that more appropriately aligned with the ALJ's RFC assessment. [Id.]. Thus, the Appeals Council found that based on the Plaintiff's age, education, work experience, and RFC, the Plaintiff was able to perform jobs existing in significant numbers in the national economy, including laundry worker, industrial cleaner, and general utility worker. [Id. at 6]. The Appeals Council, therefore, concluded that the Plaintiff was not "disabled" as defined by the Act from September 13, 2013, the alleged onset date, through December 31, 2017, the date last insured. [Id. at 7]. The Plaintiff has exhausted all available administrative remedies, and this case is now ripe for review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

Where "the Appeals Council grants review of a claim, then the decision that the Council issues is the Commissioner's final decision." Sims v. Apfel, 530 U.S. 103, 106-07 (2000). The Court's review of a final decision of the Commissioner is limited to (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). "When examining [a Social Security Administration] disability determination, a reviewing court is required to uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." Bird v. Comm'r, 699 F.3d 337, 340 (4th Cir. 2012). Substantial evidence "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek v. Berryhill, 139 S. Ct. 1148, 1154, (2019) (internal quotation marks omitted); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (internal quotation marks omitted). "It consists of more than a mere scintilla of evidence but may be less than a preponderance." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation marks omitted).

"In reviewing for substantial evidence, [the Court should] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." Johnson, 434 F.3d at 653 (internal quotation marks and alteration omitted). Rather, "[w]here conflicting evidence allows reasonable minds to differ," the Court defers to the ALJ's decision. Id. (internal quotation marks omitted). To enable judicial review for substantial evidence, "[t]he record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013). It is the duty of the ALJ to "build an accurate and logical bridge from the evidence to his conclusion." Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (citation omitted). "Without this explanation, the reviewing court cannot properly evaluate whether the ALJ applied the correct legal standard or whether substantial evidence supports his decisions, and the only recourse is to remand the matter for additional investigation and explanation." Mills v. Berryhill, No. 1:16-cv-00025-MR, 2017 WL 957542, at *4 (W.D.N.C. Mar. 10, 2017) (Reidinger, J.) (citing Radford, 734 F.3d at 295).

4

## III. THE SEQUENTIAL EVALUATION PROCESS

A "disability" entitling a claimant to benefits under the Social Security Act, as relevant here, is "[the] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration Regulations set out a detailed five-step process for reviewing applications for disability. 20 C.F.R. §§ 404.1520, 416.920; Mascio v. Colvin, 780 F.3d 632, 634 (4th Cir. 2015). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden is on the claimant to make the requisite showing at the first four steps. Id.

At step one, the ALJ determines whether the claimant is engaged in substantial gainful activity. If so, the claimant's application is denied regardless of the medical condition, age, education, or work experience of the claimant. Id. (citing 20 C.F.R. § 416.920). If not, the case progresses to step two, where the claimant must show a severe impairment. If the claimant does not show any physical or mental deficiencies, or a combination thereof,

5

which significantly limit the claimant's ability to perform work activities, then no severe impairment is established and the claimant is not disabled. Id.

At step three, the ALJ must determine whether one or more of the claimant's impairments meets or equals one of the listed impairments ("Listings") found at 20 C.F.R. § 404, Appendix 1 to Subpart P. If so, the claimant is automatically deemed disabled regardless of age, education or work experience. Id. If not, before proceeding to step four, the ALJ must assess the claimant's residual functional capacity ("RFC"). The RFC is an administrative assessment of "the most" a claimant can still do on a "regular and continuing basis" notwithstanding the claimant's medically determinable impairments and the extent to which those impairments affect the claimant's ability to perform work-related functions. Social Security Ruling 96-8p; 20 C.F.R. §§ 404.1546(c), 404.943(c), 416.945.

At step four, the claimant must show that his or her limitations prevent the claimant from performing his or her past work. 20 C.F.R. §§ 404.1520, 416.920; Mascio, 780 F.3d at 635. If the claimant can still perform his or her past work, then the claimant is not disabled. Id. Otherwise, the case progresses to the fifth step where the burden shifts to the Commissioner. At step five, the Commissioner must establish that, given the claimant's age, education, work experience, and RFC, the claimant can perform alternative

6

work which exists in substantial numbers in the national economy. Id.; Hines v. Barnhart, 453 F.3d 559, 567 (4th Cir. 2006). "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." 20 C.F.R. §§ 404.1520, 416.920; Mascio, 780 F.3d at 635. If the Commissioner succeeds in shouldering his burden at step five, the claimant is not disabled and the application for benefits must be denied. Id. Otherwise, the claimant is entitled to benefits.

## IV. THE COMMISSIONER'S DECISION

At step one, the ALJ found that the Plaintiff did not engage in substantial gainful activity from September 13, 2013, her alleged onset date, through December 31, 2017, her date last insured. [T. at 70]. At step two, the ALJ found that the Plaintiff had the following severe impairments: "bipolar disorder; anxiety; mild cognitive impairment; and degenerative disc disease of the lumbar spine." [Id.]. At step three, the ALJ determined that the Plaintiff did not have an impairment or combination of impairments that meets or medically equals the Listings. [Id.]. The ALJ then determined that the Plaintiff, notwithstanding her impairments, had the RFC to:

> [P]erform medium work as defined in 20 C.F.R. 404.1567(c) except she can never climb ladders, ropes or scaffolds. She must avoid exposure to hazards. She is limited to unskilled, low stress work

> involving simple, routine and repetitive tasks with no fast-paced production requirements. She is limited to simple work-related decisions and few, if any, workplace changes. There can be no interaction with the public and only occasional interaction with co-workers and supervisors. There must be no shared responsibilities or tandem work.

[Id. at 72-73].

At step four, the ALJ identified the Plaintiff's past relevant work as nurse assistant. [Id. at 80]. The ALJ determined, however, that the Plaintiff was unable to perform her past relevant work as actually or generally performed. [Id.]. At step five, the ALJ concluded that based on the Plaintiff's age, education, work experience, and RFC, the Plaintiff was able to perform other jobs existing in significant numbers in the national economy, including hand packer, warehouse worker, and machine packer. [Id. at 80-81]. The ALJ therefore concluded that the Plaintiff was not "disabled" as defined by the Act from September 13, 2013, the alleged onset date, through December 31, 2017, the date last insured. [Id. at 81].

Upon granting the Plaintiff's request to review the ALJ's decision, the Appeals Council adopted the findings of the ALJ at step one through step five of the sequential evaluation process. [Id. at 4-6]. However, the Appeals Council corrected an error at step five by replacing improperly named occupations with the occupations of laundry worker, industrial cleaner, and

8

general utility worker. [Id.]. Thus, the Appeals Council also concluded that the Plaintiff was not "disabled" as defined by the Act from September 13, 2013, the alleged onset date, through December 31, 2017, the date last insured. [Id. at 7].

## V. DISCUSSION[1]

The Plaintiff argues that "[t]he ALJ's analysis of the opinion provided by Dr. Salmon is unsupported by substantial evidence, as he failed to consider other significant evidence that was consistent with that opinion, including evidence from Plaintiff's treating physician and nurse practitioner." [Doc. 8-1 at 5]. Specifically, the Plaintiff argues that the ALJ did not address "evidence provided by Plaintiff's treating physicians Dr. Cull and Dr. Lewis, and treating nurse practitioner [("NP")] Emily Stamey, as well as evidence in treatment notes" when evaluating the medical opinion provided by Dr. Salmon. [Id.].

Social Security Ruling 96-8p explains how adjudicators should assess residual functional capacity. The Ruling instructs that the RFC "assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis,

---

[1] Rather than set forth a separate summary of the facts in this case, the Court has incorporated the relevant facts into its legal analysis.

9

including the functions" listed in the regulations.[2] SSR 96-8p; see also Mascio, 780 F.3d at 636 (finding that remand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review) (citation omitted).

The RFC represents "the most [a claimant] can do despite [his or her] limitations." 20 C.F.R. § 404.154(a)(1). The ALJ is responsible for determining a claimant's RFC, id. § 404.1546(c), based on "all the relevant evidence in the [claimant's] case record." Id. § 404.1545(a)(1). In forming the RFC, the ALJ "must both identify evidence that supports his conclusion and build an accurate and logical bridge from that evidence to his conclusion." Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018) (brackets, emphasis, and internal quotation marks omitted); see also Monroe, 826 F.3d at 189. An ALJ's RFC "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific

---

[2] The functions listed in the regulations include the claimant's (1) physical abilities, "such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching);" (2) mental abilities, "such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, coworkers, and work pressures in a work setting;" and (3) other work-related abilities affected by "impairment(s) of vision, hearing, or other senses, and impairment(s) which impose environmental restrictions." 20 C.F.R. § 416.945.

medical facts (e.g. laboratory findings) and nonmedical evidence (e.g. daily activities, observations)." Mascio, 780 F.3d at 636 (citing SSR 96-8p).

When an ALJ is evaluating medical opinions, he "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources."[3] 20 C.F.R. § 404.1520c(a). The ALJ "will articulate in [his] determination or decision how persuasive [he] find[s] all of the medical opinions" in the claimant's record. Id. § 404.1520c(b). The most important factors considered by the ALJ are supportability and consistency. Id. § 404.1520c(a). When considering an opinion's supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." Id. § 404.1520c(c)(1). When considering an opinion's consistency, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative

---

[3] The previous regulation governing the Social Security Administration's evaluation of medical evidence—20 C.F.R. § 404.1527—was replaced by 20 C.F.R. § 404.1520c for all claims filed on or after March 27, 2017.

medical finding(s) will be." Id. § 404.1520c(c)(2). The ALJ will also consider the source's relationship with the claimant, the source's specialization, and other relevant factors, including but not limited to "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the] disability program's policies and evidentiary requirements." Id. § 404.1520c(c).

Here, because the Appeals Council granted the Plaintiff's request for review and issued a new decision, the decision of the Appeals Council is the final decision of the Commissioner now under review.[4] Sims, 530 U.S. at 106-07; Hicks v. Colvin, No. 1:15-cv-241, 2016 WL 5844178, at *3 (W.D.N.C. Sept. 9, 2016) ("Where the Appeals Council grants review and issues a decision, it is the decision of the Appeals Council that is the final decision of the Commissioner subject to review in this Court."), *report and recommendation adopted by* 2016 WL 5844107 (W.D.N.C. Oct. 4, 2016).

In the final decision of the Commissioner, the Appeals Council "adopt[ed] the [ALJ's] findings at steps 1 through 5 of the sequential evaluation [process], with the exception of a change in representative occupations at step 5." [T. at 5]. With regard to the medical opinion

---

[4] Notably, neither party addresses the decision of the Appeals Council as the final decision of the Commissioner. Instead, both parties address only the opinion issued by the ALJ. [See Doc. 8-1; see also Doc. 11].

evidence, the decision of the Appeals Council states only that it agrees with the ALJ's analysis that the opinions provided by Dr. Salmon, Dr. Cull, Dr. Lewis, and NP Stamey "are not persuasive, as they are inconsistent with the weight and the totality of the medical evidence." [Id.].

The Appeals Council failed to specifically address any of the medical opinions in the record or offer any substantive analysis explaining why it agreed with the ALJ's determination that the medical opinions provided by Dr. Salmon, Dr. Cull, Dr. Lewis, and NP Stamey are not persuasive. "Having opted to issue a new decision rather than remand the case to the ALJ . . . it was incumbent on the Appeals Council to issue a decision that would allow this Court to conduct meaningful review." Hicks, 2016 WL 5844178, at *4. However, the Appeals Council issued a decision containing nothing more than a conclusory statement that it adopts the ALJ's RFC finding and agrees with the ALJ's conclusion that the opinions of Dr. Salmon, Dr. Cull, Dr. Lewis, and NP Stamey are not persuasive. This statement does not provide "even the semblance of any substantive analysis or explanation as to how the Appeals Council reached its decision," and it, therefore, frustrates meaningful review. Id.

To the extent that the Appeals Council adopts the ALJ's RFC finding and, therefore, seemingly seeks to incorporate the discussion of the medical

13

opinion evidence set forth in the ALJ's decision, the ALJ's evaluation of the opinion provided by Dr. Salmon is similarly deficient. Regarding the opinion provided by Dr. Salmon, the ALJ stated that:

> I find the consultative examination performed by Dr. Salmon to be not persuasive. Dr. Salmon is a consultative examiner who examined the [Plaintiff] on two occasions for the purposes of developing his report. Moreover, his findings and conclusions are inconsistent with the weight of the medical evidence, including the findings of treating specialists . . ."

[Id. at 78].

The ALJ then cited Dr. Salmon's medical opinion, stating that:

> [Dr. Salmon] noted that the claimant scored in the Extremely Low range on the WAIS-IV. Her achievement scores, as measured by the WRAT-IV, are mostly consistent with her intelligence testing. She scored in the Extremely Low range on the Beery-Buktenica Test of Visual Motor Integration, which is consistent with her visual-perceptual potential as assessed by the WAIS-IV and suggests relatively poor visual-motor integration skills. The responses on the Vineland suggest that the claimant's overall adaptive development falls within the "Low" range with general consistency between the results for the Communication, Daily Living Skills and Socialization domains. It is clear, comparing this with the historical details, that the claimant's overall adaptive functioning has substantially deteriorated in all domains. Her cognitive abilities in all areas measured by the WAIS-IV, Beery-Buktencia Test and WRAT-IV are extremely poor. Dr. Salmon noted that her cognitive functioning has declined in the past six years. Comparing these results to details of her past cognitive functioning, it is quite clear that there

> > has been a substantial overall decline in all aspects of cognitive ability. She has very poor verbal and non-verbal analytical abilities, a substantially weaker working memory (which affects everyday conversations, the ability to carry out even basic one and two step instructions, and to learn simple tasks), and very poor processing speed, which means she will require increasing support to maintain an appropriate pace in most activities.
>
> > Dr. Salmon noted that there is clear evidence of both moderate depression and anxiety. Based on the history, background records, clinical interview and results of testing, Dr. Salmon concluded that it is more likely than not that Ms. Clark has marked limitations with regard to concentration, persistence and pace, activities of daily living, and social interaction.
>
> [Id. at 78-79].
>
> The ALJ further stated, however, that:
>
> > [L]ongitudinal treatment records document improvement in symptoms with medication. Mental health records dated May 30, 2017, indicate the claimant is feeling better and more stable. On July 25, 2017, the claimant reported that medications are helping her mood. She exhibited no evidence of psychosis and denied suicidal ideations (Exhibit C6F). On October 3, 2017, the claimant reports feeling "mildly depressed" (Exhibit C9F).

[Id. at 79]. The ALJ also recited additional evidence from the record, including medical records indicating that the Plaintiff had "normal" memory and a "good" or "appropriate" fund of knowledge, medical records indicating that she had "normal" or "adequate" attention span and concentration, and

15

the opinion of Dr. Rardin, who concluded that the findings of the Plaintiff's "EEG" were compatible with "pseudodementia" and that the Plaintiff has "mild cognitive impairment with reports of short-term memory problems, possibly related to pseudo-depression." [Id.]. The ALJ further cited a Third Party Function Report indicating that the Plaintiff gets along with others and attends church, group therapy, and doctors' appointments. [Id.].

Regarding the opinions of Dr. Cull, Dr. Lewis, and NP Stamey, the ALJ similarly found those opinions to be unpersuasive. [Id. at 77]. Regarding Dr. Lewis's note that the Plaintiff "is basically disabled from her psychiatric diagnosis," the ALJ stated that "it is unclear as to whether this is a reiteration of the claimant's subjective complaints or an opinion," and it is "inconsistent with [Dr. Lewis's] examination, which revealed an appropriate mood and affect and normal judgment." [Id.]. Regarding Dr. Cull's opinion that the Plaintiff's pre-surgery examination revealed severe anxiety and depression, the ALJ stated that Dr. Cull only examined the Plaintiff once without reviewing the Plaintiff's medical record, and Dr. Cull "does not indicate specific functional limitations that would assist in determining the claimant's residual functional capacity." [Id.]. When addressing NP Stamey's opinion that the Plaintiff's psychiatric illness affects her ability to work and that the Plaintiff "would likely miss more than three days of work in a month," the ALJ

16

again recited the opinion of Dr. Rarbin and stated that the Plaintiff's mental health records from May 30, 2017, July 25, 2017, and December 2017 indicate that her symptoms had improved. [Id. at 78].

Elsewhere in the RFC assessment, the ALJ cited portions of the record that appear to support a finding of disability. The ALJ noted that the Plaintiff has been hospitalized multiple times due to her mental health impairments. [Id. at 76-77]. The ALJ stated that the Plaintiff was hospitalized on May 10, 2017 "with reports of increased depression, anxiety, and suicidal thoughts" but that the Plaintiff's symptoms improved with medication. [Id. at 76]. The ALJ also noted that, on October 26, 2017, the Plaintiff again presented with "increased depression and anxiety with suicidal ideations and irritability" as well as "command type auditory hallucinations" but that the Plaintiff reported "feeling fairly well" at follow-up mental health appointments. [Id. at 76-77]. Further, the ALJ noted that, after the Plaintiff's date last insured, she was again hospitalized in October 2018 and March 2019. [Id. at 77]. However, regarding these admissions, the ALJ stated that "[t]here is no evidence that these admissions indicate an earlier progression in symptoms" and "evidence through the date last insured indicates relatively stable symptoms with only two admissions during 2017." [Id.]. The ALJ further stated that the Plaintiff tested "positive for cannabis," but he failed to explain how the results

17

of that drug test are relevant to the Plaintiff's October 2018 and March 2019 psychiatric admissions or otherwise relevant to the Plaintiff's claims. [Id.].

Throughout the ALJ's RFC assessment, he cited to evidence that appears to both support and contradict Dr. Salmon's medical opinion. However, the ALJ does nothing more than recite portions of the Plaintiff's medical record. The ALJ never reconciled this disparate evidence, explained how this evidence supports his conclusion that Dr. Salmon's opinion is not persuasive, or explained how this evidence supports his ultimate conclusions in the RFC. While the ALJ recited certain evidence in the record, "it is not sufficient for an ALJ to simply recite *what* the evidence is." Mills, 2017 WL 957542, at *4. Furthermore, "[b]ecause symptoms of mental illness may wax and wane over the course of treatment, the fact that [the Plaintiff]" did not consistently exhibit certain symptoms is "not inconsistent with the conclusion that she is unable to work." Testamark v. Berryhill, 736 Fed. App'x 395, 398-99 (4th Cir. 2018). Thus, the fact that the Plaintiff's symptoms were not present at all times does not negate the relevance of numerous occasions when the Plaintiff demonstrated symptoms of mental illness.

The Commissioner's decision is "sorely lacking in the analysis" necessary for the Court to meaningfully review the Commissioner's final decision. Mascio, 780 F.3d at 636-37. A "reviewing court cannot be left to

18

guess as to how the ALJ arrived at his conclusions." Mills, 2017 WL 957542, at *4. Instead, an RFC "assessment must include a narrative discussion describing how the evidence supports each conclusion . . ." Mascio, 780 F.3d at 636 (quoting SSR 96-8p). As such, this matter must be remanded because the Commissioner's decision failed to "build an accurate and logical bridge from the evidence to [the Commissioner's] conclusion." Monroe, 826 F.3d at 189.

## VI. CONCLUSION

Because this Court lacks an adequate record of the basis for the Commissioner's decision, it cannot conduct a meaningful review of that ruling. See Radford, 734 F.3d at 295. On remand, the ALJ's decision should include a narrative discussion of the evidence, as required by SSR 96-8p, explaining how he reconciled that evidence (both supportive and contradictory) to his conclusions.

## ORDER

**IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion for Summary Judgment [Doc. 8] is **GRANTED,** and the Defendant's Motion for Summary Judgment [Doc. 10] is **DENIED.** Pursuant to the power of this Court to enter judgment affirming, modifying or reversing the decision of the Commissioner under Sentence four of 42 U.S.C. § 405(g), the decision of

the Commissioner is **REVERSED** and the case is hereby **REMANDED** for further administrative proceedings consistent with this opinion. A judgment shall be entered simultaneously herewith.

**IT IS SO ORDERED.**

Signed: September 23, 2022

Martin Reidinger
Chief United States District Judge

20

Case 1:21-cv-00129-MR   Document 14   Filed 09/23/22   Page 20 of 20